Good afternoon, your honors. Conor Morley, M-O-R-L-E-Y, on behalf of Samuel Collier. Good afternoon. Rita Stotz, S-T-O-T-T-S, for the people. Conor Morley, M-O-R-L-E-Y, on behalf of Samuel Collier. I'm happy to answer any questions that the court has, but I'll be focusing on two of the three issues in the briefs, and that is whether Mr. Collier was proven guilty beyond a reasonable doubt and the constitutionality of the cruel treatment to animals statute. First, Mr. Collier was not proven guilty beyond a reasonable doubt because the vet indicated that all of the dogs in his care were in good condition and health. It is true that the... But is the health of the animals an element of the crime? It is not an element of the crime. And as I'll address in the second issue, the elements of the crime are, you know, any innocent conduct could have been proven, and that also would have met the elements of the crime as well because the statute is so broad. So while the conditions could be a part of a conviction under the statute, there should be something more. One of the cases that addressed this is people leave, and that's an aggravated cruel treatment to animals. It's an aggravated cruel treatment to animals charge. There, the horses, it was about horses, and the horses were in a terrible condition. The owner of the horses was told, if you leave them in this condition, there's going to be, you know, I'm going to charge you and there's going to be something that happens. So the owner was aware and there was given some notice of the condition that the animals were in, and that was, you know, the mental state that was allowed to be proven. And I appreciate the logic of, hey, if they're not hurt, how can they be? Yeah, absolutely. I appreciate it, but I was thinking, what about cruelty that does not cause harm? Somebody gets kicked out of doing electric shock to the dog. Dog's in great shape, well-fed, but the poor thing is, you know, we can't, we don't have the psychiatrists to find out the mental effect, or you put an animal in a burlap bag, swing it around, but you don't have anything, you know, but you do cruel things to them, in other words. Wouldn't that violate the statute? Correct. It would violate the statute if there was a mens rea in the statute, because those things would go towards, you know, if you're intentionally shocking a dog, that would definitely be something that we would want to punish, that the legislature would want to punish. So the second issue is that the statute is not rationally related to its legitimate interest, and that is, so the statute reads, no person or owner may beat, cruelly treat, torment, starve, overwork, or otherwise abuse an animal. Now, the state argues that the statute requires knowledge, at least in the circuit court, and you seem to disagree with that. That's correct. The statute doesn't require any sort of mental state whatsoever. But quite briefly, you kind of implied that it may require recklessness. Did you mean to do that? No, I did not mean to say that it should be reckless. I actually think that it should be intent. If a mens rea was going to be read into the statute, I think that it should be intent. But there's many statutes. The Illinois Supreme Court has said on many occasions that if there is no mens rea stated, the mental state of intent or knowledge is read into it if it's silent. So, I mean, we have to follow the Illinois Supreme Court. So I'm not clear on that argument that you say it's silent. Yeah, okay. You're right. But that doesn't mean we shouldn't follow the Illinois Supreme Court ruling. Why shouldn't we follow the Illinois Supreme Court's many, many rulings that when a statute's silent, we read that in? Well, it's correct that one of the statute actually addresses, there is a statute that addresses if there is no mental state, it should be recklessness, knowledge, or intent. So I do agree that one of those mens rea should be read into the statute. To say that it should be knowledge, you know, there is no authority for that. To say that the mens rea is. Well, there is authority. Illinois Supreme Court has had cases where they've done exactly that. Correct. So in the same vein, then, there's authority that the mental state should be intentional, because that statute says. Intentional or knowledge. Correct. So one of the three should be read into the statute to make it constitutional. Or all three. Correct. I would like to ask a question.  Well, there are a number of reasons why that could work. First, that could work as well. The biggest issue that that presents for this case is that when the judge was finding Mr. Coyer guilty, there was no mention of any mental state. There was no, nothing was presented about mental state whatsoever. There was no. The only thing that the state presented about the conditions of the house was the conditions of the house themselves, the photographs of the conditions. There was no timing aspect to it, to refer to notice, like I said before. There was no, you know. Well, there was timing because the warrant was served at the house. Yeah, so that was the. There was also surveillance of the house for a couple of days as well. Yeah, and that's what led to the warrant. So there was about seven days from the first time that the officer got to the house to the time that Mr. Coyer was arrested. Mr. Coyer. But one, before I move on to that, there was no, there was no evidence about the condition of the house in time. None of the officers went into the house until the warrant was executed. So there was no, there was no evidence presented about the time, how long these conditions lasted in the house. Couldn't the trial court make a reasonable inference that the condition of the house couldn't happen instantaneously, that it wouldn't take a period of time? That is fair. There should, you know, if that's the analysis that the trial court is going through, which there's no evidence that it went through. Again, there's no evidence that it went through any analysis towards mental state at all. Then something about that analysis should go towards what Mr. Coyer knew. You know, not just, okay, so how many dogs there is, times how many times a dog goes to the bathroom, and that's how long it took. You know, there should, there has to be some evidence about. Do you once again agree with the statement that the mens rea is knowledge? What's your last statement? I think that the mens rea should be intent. Okay. The, the, I'm simply saying there, for a mens rea to be in the statute, for timing to be shown at all, if we're analyzing timing in the trial court, that timing should go towards the defendant's understanding of what's happening, because Mr. Coyer, you know, there was some testimony that he told the officers that, or he may or may not have told the officers. He didn't, the officer didn't remember whether he said that he had family members to help look after these dogs. So if that's a defense, if we're talking about the timing and that's what he's going to be convicted ultimately based on, there should have to be some sort of understanding that Mr. Coyer knew about these conditions, as opposed to, you know, my nephew was looking after them. Right. But there was also testimony that at least one of the dogs was tied to a pole outside in 15-degree weather. And I guess even if the trial court were to use a mens rea of intent, certainly someone left the dog there in 15-degree weather tied to a pole. It's my understanding that he actually came and went into the house during that period of time. So actually what happened was that the very first time the officer came to the house, he saw the dog on the pole tied to the pole. There's actually a tether. I was referring to Mr. Coyer actually came by the house during that time as well. You're correct, Your Honor. While the dog was outside in 15-degree weather. You're correct. I know his body is different from ours, but 15-degree weather. You're correct. So there is a tethering statute that addresses when you can tether a dog. It's under the owner's duties statute. And it specifically says when you can tether a dog and how you can tether it. There was no alleged violation of that statute, which again goes back to the vagueness of this statute, that he could have been charged for tethering the dog. He could have been charged for, you know, it's unreliable evidence, but the officers did say that there was no food and water in the house. They contradicted themselves and said there was food and water in the house. He could have been charged for that. He could have been charged with the conditions of the house. All of these things go to the unconstitutional vagueness of the statute because cruelty and otherwise abuse are so broad. There are things like declawing cats and docking tails. All of those things would constitute cruel treatment or abuse depending on who's analyzing them. So it is true. I'm not aware of any cases declawing a cat is cruel. There are no cases of that. So there is. I mean, this statute's been around since 1986, and nobody's brought up this constitutional issue, and apparently there's been several cases. All right, it's the first time. But it seems like a very unique argument that it's so surprising as to what abuse is or cruelty to an animal. Well, the fact that there are no published cases, but there obviously have been convictions since the 80s under the statute, it would cover that, though, and that goes to the unconstitutionality of the statute. You would be guilty if you had the right judge of cruelty to animals. That's not necessarily true. I mean, to me, that's – I don't know where you're getting that. It is a norm in this society for certain animals to be declawed. So, I mean, nobody has ever – again, there's nothing in the law or otherwise that says that that's cruel or abusive of those types of animals. But here, the conditions – no heat. The testimony of the officers was water was frozen in a bowl. No food. Animals looked thin. There was an ear infection on a dog. Now the dog was losing hair. The insides were disgusting, which in and of itself is an expression that you wouldn't treat a dog like. But I'm not trying to be – I don't know, sarcastic or anything. But really, that's the situation here where animal, a dog, and specifically four dogs, are being treated in a way that is extremely – it comes right under the word what it means to be abusive and cruel. Well, one of the – if I could respond in two ways. One, kind of a legal analysis, and one based on the facts of this case. First, a statute is unconstitutionally – or one of the ways a statute can be unconstitutionally vague is if there is no objective criteria to analyze a violation of the statute, and that is instead left up to the subjective idea of the trier of fact. And that's exactly what we have here, and that's exactly what I was referring to with the declawing caps, where there are many, many, many examples of things that someone would find abusive and other people wouldn't. That's exactly what you have here. The judge said almost exactly what you said. He said, I find these conditions absolutely disgusting, and I think you're guilty. There was no – you know, like the Seth statute, he didn't – you know, there was paint on the dog, so you knowingly had this – you know, he's checking boxes, whereas this finding was, to me, these conditions are horrible, and it should be cruel and abused. Where if another judge was in there, they could have said, well, these conditions are absolutely not ideal, but all the dogs were in good condition and health, so it must have been that bad. A good condition has nothing to do with the statute. I mean, to me, that's a non-starter. You can be cruel and abusive to an animal or a human being without – with a doctor checking them and find out they're fine physically. And again, you know, we don't know about the mental condition, and they do have brains and they do think and they do have personalities. Dogs have personalities. Absolutely. So, you know, a child can be cruelly treated, but be in good health. What's wrong with a dog? And so I don't see where that gets you. I agree with you. They can be in good health. This – because this statute is so vague, there is no case that says the conditions of the house, the conditions that the animals are kept in alone constitute cruel treatment or abuse. There's no case law to confirm or deny that either way. So our position, Corey's position, is that there has to be something more. You can't just show photos of an environment that is absolutely less than ideal, and that's it. But there wasn't. There was testimony too, right? There was testimony to the inside of the house. And then if I – And that was testimony about him being outside and about the leash. Correct. I mean – So what is it that – I mean, but you're just saying it was just the pictures. No. Well, it was the temperature. The temperature was shown in the pictures, but there was testimony as to the temperature of the frozen water. So, yeah, if I could address the facts first, and I started to get into this. So the first time the officers came out, the dog was outside in the backyard, and that was it. He just saw them out there. He left. He came back later a second time, I believe it was the next day or two days later, and Corey was there taking the dog from the outside to the inside. It wasn't as if, you know, he saw the officer and then ran out there. As the officer was approaching, he saw Mr. Coley coming from the outside to the inside. This would suggest that he's not leaving the dog outside all day long. Also, the fact that the dog wasn't harmed, the dog absolutely would be harmed and would have issues if it was left outside in 15-degree weather all day and all night. There would be physical issues. Well, he wanted to go outside in the weather. There was no difference between the temperature inside the house and outside the house. So that was a testimony. Correct. The judge didn't accept that testimony. Correct. That wasn't the 15 degrees, though. The 15 degrees was the first time he showed up a week earlier. There was absolutely no testimony about the temperature on the day Corey was arrested, no testimony about the inside or outside of the house. Also, to go towards the food and water, well, let me stick with the temperature. First, Coley was there two of the four times that the officers were there, so, you know, it wasn't unbearably cold. He was inside the house when all of that happened. Additionally, there was testimony that there was a space heater in the house, so presumably if it is 15 degrees all night long and nobody's going to be with the dogs, they can turn the space heater on and there will be— Well, the dog is—I mean, that's a different perspective. It doesn't have to take account of that. Yes, but there's a space heater in the house, I guess, is the ultimate— In the same vein, there was no testimony about how cold or warm it was. So we don't— I saw testimony that there was no difference in the temperature in the house and outside. There was no change in the temperature, but there was no testimony about what the temperature was. There was no testimony about what the temperature was outside or inside. A week earlier, it was 15 degrees, but that was the only testimony that we had. It's strange to me that two officers who deal with animals would say it's way too cold for these dogs and not say, well, it's X temperature inside or outside. With that being said, I just wanted to address the mental state part of the statute and the constitutionality of it. Because there was no mental state in the statute, and as we sort of touched on, this could punish a wide range of things. And as Your Honors have noticed, there is no case law punishing these things, but it absolutely could be punished. There is the Davis v. Mississippi case, their horse's leg was hurt and the owner made the discretionary decision to let the horse's leg heal on its own without seeing a specialist. The horse's leg healed, and then someone later came out and said, oh, this horse is in constant pain and it has a lint. And he was charged with—the owner was charged with animal cruelty in Mississippi, and they struck it down because there was no mens rea discussed at all. So he didn't intentionally do this to his horse. He didn't knowingly or recklessly, which is the exact same thing that happened here. There was no testimony that any of this was done knowingly, intentionally, or recklessly. Yeah, if there are no further questions, I'll save the remainder of my time for rebuttal. Great, thanks. Thank you. Thank you. Okay, please, the court. Counsel. This was more than a messy house. As some of the questions have—I just want to get through some of the sufficiency facts. There was a space heater. There's no evidence that it was functional or that it was turned on. As for the temperature, the officer said it was cold, and you have that photograph of liquid that appears to me to be frozen, so you can certainly take that into account as evidence of temperature. Knowledge is the only appropriate mental state to read in here, and the defendant is now saying it's intent, but that can't be squared with the mental state statute, which says you read in any of the three mental states. You couldn't read in a lower one if the highest mental state applied. If the highest one had to be read in, the statute would say that. Knowledge, which is what we're arguing applies here, is the mental state that applies to most criminal offenses. Specific intent is really the exception rather than the norm, and the defendant hasn't shown why specific intent should apply here. And the Supreme Court is going that way on several criminal statutes that have not—they follow the criminal procedure. Right, follow the statute. So, yeah, it's not just a question of interpreting the animal cruelty statute. You have to read it with the mental state statute and read them together. The defendant seems to be arguing that the trial judge must not have applied the mental state here. Well, the trial judge did not provide any analysis to what mental state was being applied. That's true, but a trial judge in a bench trial does not need to make any specific findings. We presume the judges know the law. The judge doesn't need an appellate court decision explaining how this works. The judge knows how to read the animal cruelty statute, and he knows how to read the mental state statute. He knows to read in the mental state of knowledge. And if the defendant had been confused about what mental state applied, he certainly could have asked. He could have asked for specific findings. He didn't do any of that. About—as for the point about there's no evidence to have long the conditions existed, I would disagree. The defendant's statement to the officer basically took responsibility and said, yes, I'm trying to breed these dogs in this house. There was also a piece of mail addressed to the defendant at the house, so we know he had some authority over it. He was seen bringing in one of the dogs on one occasion. And the large amount of feces in the house, I would encourage the court to look at the pictures. This was astounding. This had to have been going on for some time. And one of the officers testified that it had been swept into a pile. So either defendant or some accomplice knows about this and is deciding to just let it continue by sweeping it into piles and dumping it in a bathtub. So that—so those conditions of the house overall amount to abuse and cruel treatment as to all four of the dogs. But in addition, you know, we do have some of the testimony, some of which comes from the stipulated testimony of the vet. And the vet didn't say these dogs are in great condition. He was evaluating whether they needed medical treatment. And as the courts pointed out, that an animal be injured or end up needing medical treatment is not an element here. But the vet did say, you know, one of the dogs had alopecia and a distended abdomen. And one of the dogs had an infection. So they weren't in great condition. But that doesn't matter anyway. The conditions overall that they were held in, large amount of urine and feces trapped in small cages with urine-soaked bedding. One of the dogs was painted. One of the dogs didn't get treatment for an infection. It's the overarching treatment of the dogs as a whole. And that's sufficient to prove that defendant knowingly abused these animals. Defendants also would argue the statute's vague. But he's pointing to hypotheticals. He's saying things like, what about declawing cats? You know, how would we know if that's a problem? This statute does not involve the First Amendment. So he can't make a facial vagueness challenge. All he can argue is that it's vague as applied to what he did. Would a reasonable person know that the things he subjected these animals to were against the law? And clearly they would. It's true that abuse is a general term. But it has to be, because there's no way the legislature can anticipate all of the horrible things that people will do to animals. They don't need to put in the statute, you know, don't paint your dog. They have to use a general term like abuse. But that doesn't mean it's unconstitutionally vague. The Supreme Court decision in Dednam is helpful here. That was a case about the maltreatment of a person in need of mental health treatment. And those defendants said, oh, well, maltreat is vague. And the court said, no, it's general, but it's not unconstitutionally vague. And they also said maltreat is equivalent to the term abuse. So we know from Dednam if maltreat is not vague and it's equivalent to abuse, then this statute can't be vague either. The dog that was painted, this is not relevant, Amy, but it's not relevant, but that was the dog that was stolen. That was the stolen dog. The rest were also painted. It had worn off a little bit around the muzzle by the time it was returned to its owner. But, yes, he acknowledged it was painted because he knew it was stolen and he was trying to. And the defendant has also found guilty of the theft, right? Correct, the theft of that dog. But that's not a misdemeanor, correct? Right, he's not challenging that here. Just a minute. Our witness had mentioned that maybe a family member was looking after the dog. That was in arguments by counsel, and I think it might have been in the allocution statement, but there was no evidence at trial of that. And I think that's all I have. Unless the court has further questions, I'd ask the court to affirm the judgment. Thank you. Just a few issues to touch on. First, the ear infection and the things that the dog did need treatment for. There was testimony that that was for a fly mite, or there was actual testimony that that was not based on abuse or neglect. So the same with the alopecia, there was testimony that everything that the dogs needed, which was simply treatment for the ear infection, did not come from abuse or the environment or anything that Coley did. The state argued that the statute would say intent if it should be a higher intent, if it should be a higher mens rea or vet in. The statute doesn't say anything, so to argue that the statute would say something about that, that doesn't connect, because if the statute doesn't say anything about the mens rea, why would it say that it should be intent if it was supposed to be intent? The fact that the statute is silent on the mens rea is part of what makes it unconstitutionally vague and what makes it punish innocent conduct. Would this regard the criminal procedure act? No, this Court should read in one of the mens reas. So her counsel's argument was there's no reason why you shouldn't read in the noneth. That's her argument. There's three there. So in the same vein, there's no reason why you shouldn't read in intent or recklessness. But we can read in the noneth. You could read in any of the three. Right. So to say that it's knowingly is just as strong as an argument of saying that it's intent or that it's reckless. If recklessness were written into the statute, what would be different? If recklessness was written into the statute? What would be different? Well, you would have to prove that he knew something about what was going on. He knew about these conditions of the house. You're using knowledge again. Well, okay. He knew. Well, with recklessness, you don't have to prove knowledge. You don't have to prove that someone knew. If you're reckless, you don't necessarily have to have knowledge. So there still has to be. You're engaging in an activity that you should know has a likelihood of causing harm. That's what recklessness is. It doesn't require knowledge. So then the state would have had to prove that he should have known the conditions of the dogs. No, it's not should have known. It's engaging in activity such that your activity could cause harm. I apologize. With a reasonable likelihood. I apologize. The activity you're engaging in could cause harm to others. That's what recklessness is. I apologize. I keep saying knowledge. What I mean is the state would have to present some evidence about the mental state. And so if the mental state was recklessness, if it were recklessness, what would be different about this case? I mean, hopefully the state would have proved that. If the court were to find that that's the mens rea that should be read into the statute, then it becomes a question of on what basis should this court affirm the charge. If it reads recklessness. On what basis from the record. If this court reads recklessness into the statute, then that would go to the second issue raised in the briefs about Mr. Crow was not informed of the charges against him to adequately prepare a defense. If he would have known that the mens rea was recklessness, then he could have tailored the defense to that mens rea. Also, if this court reads any mental state into the statute, that is not proven at trial. There was no analysis. To say that the judge knew the law was the law that's about to be read into the statute, therefore he applied that law that's now being read into the statute, doesn't make any sense. It may not make sense, but we can cite hundreds of cases that have said just when the judge did appropriately here make his ruling. He may not like it. I respectfully disagree with that. What I'm saying is, you're saying whether Ruben's right or wrong, that's a different issue. All I'm saying is that the judge is presumed to know the law. And you say, well, I don't like that. The law, that is the law. We have to follow that law. That's what my Supreme Court has told us. That is the law in this state. So we have no choice. I agree with you. If the, he is presumed to know the law, but if that is read into the statute, there's no, there was no analysis of whether he was, he acted with any of those. He doesn't have to analyze. That's correct. So if there are no further questions, I will submit the case for decision. Okay, well, thanks again. Thanks, folks. Good job. Appreciate it. Interesting, interesting issues. And thanks again. Thank you. All rise.